UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ROBERT WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:15-cv-01255-GBL-TCB |
| ) | |
| RICOH AMERICAS CORP., ) | |
| ) | |
| Defendant. ) | |

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Robert Williams's Opposition (the "Opposition") to Defendant Ricoh USA, Inc.'s[1] properly supported Summary Judgment Motion (the "Motion") is an attempted sleight of hand. As he does in his own summary judgment motion, Williams asks this Court to disregard settled law and ignore that he has not carried his burden to avoid summary judgment. Instead, relying on a combination of speculation and inadmissible hearsay, Williams argues that merely because he allegedly engaged in protected activity, summary judgment cannot be entered in favor of Ricoh regardless of the fact that he has offered not even a shred of evidence of pretext. He is wrong as matter of law. Williams's Opposition does nothing to avoid the inevitable conclusion that summary judgment on all remaining counts is warranted for Ricoh.

### I. WILLIAMS'S FAILURE EVEN TO ADDRESS PRETEXT IS A TACIT ADMISSION THAT HE CANNOT MEET HIS BURDEN, WARRANTING SUMMARY JUDGMENT FOR RICOH.

Williams is, yet again, attempting to cherry pick pieces of vastly different legal theories of recovery to cobble together a legal test to suit his theory of his case, ignoring settled precedent in the process. In short, knowing he cannot establish but-for causation or pretext, Williams seems to espouse a standard that relieves him of having to establish either. Specifically, in an obvious attempt to avoid the rigorous "but-for" standard articulated in *University of Texas Southwestern Medical Center v. Nassar,* 133 S. Ct. 2517 (2013) applicable to direct evidence cases, Williams argues that this case should proceed under the *McDonnell Douglas* burden shifting framework. (Opp. at 22.) Of course, in admitting that the *McDonnel Douglas* framework applies, Plaintiff concedes – necessarily – that he must establish pretext to avoid summary judgment. *See e.g., Vannoy v. FRB of Richmond*, 2016 U.S. App. LEXIS 11774 (4th Cir. June 28, 2016) (affirming the grant of summary judgment to a defendant on a retaliation

---

[1] Incorrectly named as Ricoh Americas Corporation.

claim where plaintiff offered nothing other than his own speculation to refute that his poor performance, misconduct, or insubordinate behavior actually caused his termination). Remarkably, despite his vigorous assertion of what test does **not** apply to his case, Williams does not even address one of the basic elements of the test that he claims should apply, despite two briefing opportunities to do so. In failing to even address pretext, Williams necessarily concedes that he has failed to carry his burden. Summary judgment is warranted for Ricoh on this reason alone.

To establish pretext, Williams needed to assert that Ricoh's rational for his termination "was a sham and that *the true reason* was an impermissible one under the law." *Ousley v. McDonald*, No. 15-1482, 2016 U.S. App. LEXIS 8929, at *5-6 (4th Cir. May 16, 2016) (emphasis added); *see also Mayo v. Smith*, No. 1:15-cv-00299, 2016 U.S. Dist. LEXIS 65172, at *15 (E.D. Va. May 16, 2016) ("As the Fourth Circuit recently confirmed, in order to prevail at the 'pretext stage,' a plaintiff must demonstrate that intentional discrimination or retaliation was 'the real reason,' which is to say, the '*but-for* cause' of the challenged employment action." (Emphasis added).). "[A]n employer's provision of shifting and inconsistent justifications for taking an adverse employment action is, in and of itself, probative of pretext." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir. 2015).

As set forth in Ricoh's various submissions to this Court, the record is clear that Ricoh has never once waivered in its rationale underlying its decision to terminate Williams's employment: Williams's admitted and pervasive failures, over a period of *years*, to meet Ricoh's articulated expectations, include the following:

- Williams's admitted failure to show up for work on August 15, 2013, without communicating in advance. (Williams Dep. at 251, MSJ Ex. 3.)[2]

- Williams's admitted failure to appear in the office without providing prior notice to Glancey on August 30, 2013. (Email String (RICOH_RW_0000080), MSJ Ex. 17; Williams Dep. at 245, MSJ Ex. 3.)

- Williams admitted slip-ups and mistakes in 2013. (Williams Dep. at 257, MSJ Ex. 3.)

- Williams's violation of Ricoh policy in annotating a work order that had already been signed by a customer in December 2013. (ECR (RICOH_RW_0000087, MSJ Ex. 19.)

- Williams's admitted failure to show up at an event to which he invited a Ricoh business partner in March 2014. (Email String (RICOH_RW_0000315), MSJ Ex. 20.)

- Williams's failure to appear at work on April 24, 2014 with no prior warning or notice. (Email String (RICOH_RW_0000028), MSJ Ex. 21.)

- Williams's failure to respond to Glancey on May 2, 2014 until 10:30 a.m. (Email String (RICOH_RW_0000034), MSJ Ex. 23.)

- Williams's admitted failure to attend a meeting with his third-level supervisor (Thomas Brown) on July 2, 2014, for which he provided no prior notice after being told that Ricoh was "at the end of the line" with Williams's performance issues. (Email String (RICOH_RW_00000328), MSJ Ex. 28; Williams Dep. at 292, MSJ Ex. 3.)

- Williams's admitted failure to show up for work at 8:00 a.m. on January 12, 2015 without notifying Glancey until 11:30 a.m. that he would not be coming in to the office. (Email String (RICOH_RW_0000430), MSJ Ex. 29.)

- Williams's failure to timely appear at and ultimate failure to show up at a product show at FedEx Field on January 14, 2015 in which Ricoh clients were invited to attend. (Text Messages, (RICOH_RW_00000343), MSJ Ex. 30.)

---

[2] Exhibits that were attached to Ricoh's Motion for Summary Judgment are noted herein as "MSJ Ex."

The unrefuted facts show that Glancey relied upon this "long and well-documented history" in suggesting that Ricoh terminate Williams's employment in January 2015. (Glancey Dep. at 149, MSJ Ex. 4.)

Even if Williams's theory of the case – that Glancey viewed Williams's June 2013 Email as "the straw that broke the camel's back," and "prompted Glancey to start documenting Williams's alleged performance deficiencies in order to build a case for termination" (Opp. at 21) – were credited, Ricoh would still be entitled to summary judgment. Indeed, by admitting that the June 2013 Email was the final "straw that broke the camel's back," Williams necessarily admits that there were other straws (*i.e.*, performance problems) that were already weighing on the proverbial camel prior to his alleged protected activity. His admission is understandable as even a cursory review of the June 2013 ECR shows that it was based upon multiple infractions other than Williams' insubordination reflected in his June 2013 Email. (*See* June 2013 ECR (RICOH_RW_000040), MSJ Ex. 15 (citing numerous violations of Ricoh's policies).)[3] The Fourth Circuit has already held that a plaintiff in such circumstances cannot show pretext. *Anderson v. Discovery Communs.*, 517 Fed. Appx. 190, 196-197 (4th Cir. 2013) (plaintiff cannot establish pretext where alleged protected activity was merely the "proverbial straw that broke the camel's back" or just one event in a long line of issues that ultimately led to an employee's termination).

In his Reply, Williams relies on stray language in *Burrage v. United States*, 134 S. Ct. 881, 888, 187 L. Ed. 2d 715 (2014) – a criminal case under the Controlled Substances Act

---

[3] Of course, employers may, in certain circumstances, legitimately discipline employees for insubordination who "accus[e] a supervisor of creating a master/slave relationship." *See e.g., Morales v. Rooney*, NO. 3:06-CV-1556, 2010 U.S. Dist. LEXIS 35115 (D. Conn. Mar. 31, 2010); *see also Williams v. Pulaski County Special Sch. Dist.*, No. 4:10CV01143, 2011 U.S. Dist. LEXIS 55525, at *12-13 (E.D. Ark. May 24, 2011) (same).

involving the sentencing of a heroin distributor after a user died hours after taking heroin purchased from the distributor along with other controlled substances – in support of his "straw that broke the camel's back" theory of his case. But, despite *Burrage's* use of the same colloquial phrase, it lends him no support. *See Arthur v. Pet Dairy*, 593 Fed. App'x 211, 221 (4th Cir. 2015) (addressing the same stray language in *Burrage* and noting that if the Supreme Court actually "desired to make a radical change to recent precedent, it would not do so quietly in a case having nothing to do with employment discrimination.")

In *Burrage*, the Court described but-for causation as follows: "if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." *Id.* at 888 (emphasis added). Here, Williams attempts to analogize to *Burrage* by arguing that his "slave" statement in the June 2013 Email was the "poison" that lead to his ultimate termination eighteen months later.

Leaving aside the dubious applicability of *Burrage* to the analysis, nothing in the factual record supports any such conclusion. ***First***, there is no dispute in the record that the proverbial weight on the camel's back before any alleged "straw" in June 2013 was Williams's own admitted failures to meet his employer's expectations. (*See* Williams Dep. at 236.) ***Second***, Glancey actually testified that as of June 2013 – the time of Williams's blatant insubordination in refusing to provide the important FERC RFQ Response – he had reached a turning point with Williams. (See Pl.'s Reply at 4.) Glancey did **not** testify that Williams's "slave" statement itself was the turning point, as Williams implies. (*Id.* (citing Glancey's testimony).) ***Third***, Williams's attempt ignores the fact that in *Burrage*, the heroin overdose lead immediately to the victim's death, whereas Williams continued to be employed for eighteen months. His effort to

cast his "slave" statement as the "poison" that lead to Williams's termination in January 2015 is simply disingenuous. Unlike the *Burrage* case, Williams engaged in numerous intervening performance issues (culminating with his failure to show up at a key client event without providing prior notice to his supervisor despite numerous write-ups for the very same issue over the years) between his statement and his termination. (*See* Glancey Decl., ¶ 12. MSJ Ex. 18.) The absurdity of Williams's position is most apparent when put into the *Burrage* context. If Williams's theory were correct, the sale of one dose of heroin to a victim in June of 2013 could be considered the "but for" cause of the victim's death by oxycodone overdose eighteen months later, after months of oxycodone abuse. Williams's reliance on *Burrage* simply does not enable him to establish either but-for causation or pretext.

Further, even assuming *arguendo* that the June 2013 ECR constituted protected activity, Williams's argument that all subsequent discipline after the June 2013 ECR somehow evinced a retaliatory motive would turn on its head the settled rule that plaintiffs are not "shielded from discipline merely by engaging in protected activity under Title VII." *Guerrero v. Lynch*, 621 Fed. App'x 755, 757 (4th Cir. 2015); *see also Ziskie v. Mineta*, 547 F.3d 220 (4th Cir. 2008) ("a complaining worker is not thereby insulated from the consequences of insubordination or poor performance.")

Likewise, any belated effort on Williams's part to somehow claim that he established pretext because he allegedly believed Glancey was a racist fails as a matter of law. A plaintiff cannot establish pretext by pointing merely to his own "impermissible speculation." *Guerrero*, 621 Fed. App'x at 757. "While [a plaintiff] may feel that [his former employer's] actions were discriminatory, a subjective belief that one has been discriminated against, no matter how fervent, cannot be the sole basis of judicial relief." *Harrell v. Hutson*, No. 93-2514, 1994 U.S.

App. LEXIS 19396, at *11-12 (4th Cir. July 27, 1994) (*citing Burdine*, 450 U.S. at 252-53). A plaintiff's "unsupported assertion regarding" his employer's "treatment of other employees is insufficient to establish that the asserted basis for [his] termination was pretext for retaliation." *Al-Habashy v. Commonwealth Dep't of Juvenile Justice*, No. 7:13CV00459, 2015 U.S. Dist. LEXIS 138214, at *26 (W.D. Va. Oct. 8, 2015) (granting summary judgment on the retaliation claim because the "plaintiff[']s own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.").

Similarly, Williams' mere speculation gathers no additional weight by adding the hearsay and speculation of others. Thus, Williams's attempt to offer the hearsay and speculation of third parties about ***their*** perception of Glancey as a racist and/or Glancey's alleged favorable treatment of certain employees also does not establish that Ricoh's reason for terminating Williams (*i.e.*, his long list of admitted performance failures) is pretextual. *See Lorenz v. Fed. Express Corp.*, No. 7:10-cv-00487, 2012 U.S. Dist. LEXIS 116464, at *36 (W.D. Va. Aug. 17, 2012). "It is the perception of the decision maker which is relevant to the question of retaliation, ***not the opinions of the [plaintiff's] co-workers or third parties.***" *Id.* (emphasis added) (citing *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998)). In cases – like this one – where a plaintiff admitted to the underlying conduct that led to the discipline, the "plaintiff's efforts to contest the disciplinary letters, based on [his] own perception that others were not disciplined for similar conduct, or that [he] was performing as well as other employees who were not disciplined is not sufficient to create a genuine issue of material fact." *Id.*

There is simply no basis in the record that Glancey was attempting to curate Williams's termination either because of his race or in retaliation for the statements in Williams' June 2013

Email. Despite having 60 pages of briefing opportunities to do so, Williams has not even tried to argue that Ricoh's reasons for issuing discipline to Williams, including his ultimate termination, were false and/or a pretext for discrimination or retaliation. He simply asks this Court to ignore that part of his burden. Again, Williams' impossible request is understandable because he has already admitted to the performance failures that led to his termination and, therefore, cannot possibly establish pretext. Based on this singular, dispositive reason, this Court can stop its analysis and grant summary judgment to Ricoh on all counts.

## II. WILLIAMS HAS NOT MADE OUT A *PRIMA FACIE* CASE OF RETALIATION.

Even before Plaintiff's pretext failures, Williams' retaliation claim fell short because his alleged actions are not protected activity. In an attempt to avoid this result, Williams's Opposition obfuscates the undisputed facts and the law in an effort to distract from the fact that his failure to establish any protected activity is fatal to his claim because he cannot meet his *prima facie* case. Despite all of the hearsay and speculation that Williams points to, the key dispositve facts are simple and unrefuted. (*See* Opp. at 11 (admitting to the key facts); *see* Mot. at ¶¶ 28-32, 39-41):

- In May 2013 or June 2013, Glancey and Williams "had an ongoing dialogue" "on a daily basis" about Williams completing the FERC RFQ Response. (Glancey Dep. at 97, MSJ Ex. 3.)

- "Williams continued to indicate to [Glancey] that he was working on a draft and would share it with [him]." (*Id.*)

- On Thursday, June 13, 2013 Glancey asked Williams: "I have asked to see a draft of your response at least 3 times, when am I going to see it?" (Email String (RICOH_RW_0000016-17), MSJ Ex. 10.)

- Williams responded that he will have a draft on "Monday morning." (*Id.*)

- On the early morning of Friday June 14, 2013, Glancey responded that Monday morning is the day before it is due, and therefore too late. Glancey tells Williams to send him his draft by 9:00 a.m. (*Id.*)

- Instead of complying with his supervisor's request, Williams responded: "I will request a meeting with Human Resources ASAP... I am not going

to allow you to treat me with a 'Master' mentality. I am not your slave."
(*Id.*)

- Despite being told by his supervisor to provide a draft of the FERC RFQ Response by 9:00 a.m. on June 14, 2013, Williams did not provide a first draft to Glancey until three days later at 2:53 p.m. on June 17, 2013, the day before it was due. (R. Williams Email String (RICOH_RW_0000310), MSJ Ex. 13.)

- FERC rejected the RFQ Response and Williams admits that he was "totally responsible" for Ricoh losing the opportunity which was worth around $100,000 to Ricoh. (*Id.*)

- Williams admits that he did not believe that Glancey's email seeking the draft response was motivated by Williams's race or age. (Williams Dep. at 191, MSJ Ex. 2.)

- Thereafter, Glancey worked with Wilford to craft an Employee Counseling Report ("ECR") to Williams addressing six discrete performances, absenteeism, insubordination and other behavioral issues. (*See* Email String (RICOH_RW_0000053, MSJ 14; *see also* ECR (RICOH_RW_000040), MSJ Ex. 15.)

Williams attempts to obscure his insubordination to his supervisor (*i.e.,* refusing to provide the FERC RFQ Response) by instead challenging the sufficiency of Ricoh's response from its Human Resources department to his June 2013 Email and by offering his speculation and hearsay evidence of other employees about their subjective views that Glancey was a racist. But his obfuscation only highlights that he has not met his burden. This speculation does not evince that Glancey took action because of Williams's race nor does it turn Williams's refusal to follow his supervisor's direction into protected activity. Simply stated, an employee does not engage in protected activity by refusing legitimate directives by choosing racial terms when articulating that refusal.

In fact, Williams admits that he did **not** believe Glancey was sending emails about the FERC RFQ response because of his race. (Williams Dep. at 191, MSJ Ex. 3.) As Williams was not objecting to an instruction to him based on his race, his insubordinate refusal to follow that instruction cannot be protected activity. At most, Williams made a mere accusation that his

supervisor – who is asking the employee to perform his job – was treating him like a "slave", which is not protected activity as a matter of law. *Buchanan v. Genentech, Inc.*, No. 09-01454, 2010 U.S. Dist. LEXIS 90061, at *8-9 (N.D. Cal. Aug. 31, 2010).

Even if Williams's comment could be viewed as an opposition to a broader, racially hostile work environment, his comment would still not amount to protected activity because, according to Williams, the only basis for his speculation that Glancey was racist was his perception as to his alleged tone of voice. (Williams Dep. at 140, MSJ Ex. 3 (Williams admitting that he **never** heard Glancey use a racial slur)). It is simply not an objectively reasonable basis to assert that a hostile environment exists. *Durant v. SAFE Fed. Credit Union*, No. NO. 3:13-626, 2015 U.S. Dist. LEXIS 26198, (D.S.C. Mar. 4, 2015) (a complaint about a mere perceived change in tone of voice toward one protected group is not an objectively reasonable complaint about a hostile work environment).

Williams's assertion that Coggins viewed his June 2013 as a complaint about race discrimination both misstates the unrefuted record and is a red herring. Coggins actually testified (repeatedly) that she could not "recall the specifics" of Williams's June 2013 Email. (*See* Coggins Dep. at 37; *see also id.* at 35 ("I don't remember reading this specific email. . . . "I don't remember the specific situation. I had never met Robert Williams at this point"), attached Ricoh Opp. Ex. A.) Consequently, all of Coggins's testimony that Williams relies upon in his Opposition about Williams's June 2013 Email was speculative and hypothetical at best. In any event, Coggins's view of what Williams's comment amounted to is of no moment because the decision maker, Glancey, specifically testified that he did not understand Williams's June 2013 Email to be about race. (Glancey Dep. at 100, 102, 103, MSJ Ex. 4.)

Even if Williams's June 2013 Email was protected activity, however, Williams still could not make out a *prima facie* case because he has not established a causal connection between any alleged protected activity and his ongoing discipline. Williams's reliance on a *Wheat v. Florida Parish Juvenile Justice Committee,* 811 F.3d 702 (5th Cir. 2016) to establish causation is misplaced.[4] In that case, the plaintiff engaged in the very same conduct both before and after her protected activity: excessive force upon an inmate. *Id.* at 710. In light of **both** the employer's failure to offer any rationale for the disparate discipline levels for the two events and the unrefuted evidence of inconsistent discipline levels across all employees for this very same infraction, the *Wheat* court denied summary judgment because of this dispute of fact. Here, the unrefuted evidence does not establish identical conduct on Williams's part before and after his June 2013 Email. Instead, the record merely reflects that Glancey *progressed* to written discipline after Williams's performance and attendance issues did not improve over time – and in fact got worse –after verbal coaching. (*See* Glancey Dep. at 113, MSJ Ex. 3.). Multiple intervening violations of an employer's attendance policy between the alleged protected activity and the adverse action erode any inference of causation. *Bullock v. Kraft Foods, Inc.*, No. 3:11CV36, 2011 U.S. Dist. LEXIS 13448, at *8 (E.D. Va. Nov. 22, 2011), *aff'd*, 501 F. App'x 299 (4th Cir. 2012).

Despite Williams's attempt to obfuscate the record by arguing that Glancey somehow wanted to terminate Williams in May 2014 (Opp. at 14), the unrefuted record belies any assertion that Glancey had an animus toward Williams. *See Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (to survive summary judgment a plaintiff must show "evidence of

---

[4] Leaving aside that Williams has not pointed to any Fourth Circuit case for the theory that failure to provide the exact same level of discipline for the same conduct before and after protected activity may be probative of causation, *Wheat* is inapposite for the reasons stated above.

retaliatory animus"). Instead, the record shows that Glancey gave Williams multiple chances – over a period of **years** – to improve before his January 2015 termination. (*See* Glancey Dep. at 127-28, MSJ Ex. 4.) Despite these chances, Williams admitted that his performance and attendance issues continued. (*See e.g.,* Email String (RICOH_RW_0000430), MSJ Ex. 16 (Williams admitting he failed to comply with attendance expectations); *see also* Williams Dep. at 257, MSJ Ex. 3.) Given his admitted misconduct, no conceivable inference of causation exists.

Consequently, Williams failed to make out a *prima facie* case of retaliation and Ricoh is entitled to summary judgment.

### III. WILLIAMS HAS NOT MADE OUT A *PRIMA FACIE* CASE OF RACE DISCRIMINATION.

In a further obfuscation effort, Williams espouses a *prima facie* standard of race discrimination that eliminates his burden to establish that he was performing satisfactorily at the time of the adverse employment action. (*See* Opp. at 21.)

According to the Fourth Circuit, to establish a *prima facie* case of race discrimination, Williams must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing satisfactorily at the time of the adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. *Freeman v. N. State Bank,* 282 Fed. App'x 211, 216 (4th Cir. 2008). Williams has not made this showing.

At the outset, the record is unrefuted that Williams was not performing his job satisfactorily from 2013 through his termination. (*See e.g.,* Williams Dep. at 254 (admitting to "slip ups in 2013").) For that reason alone, Williams cannot make out a *prima facie* case. *Vannoy,* 2014 U.S. Dist. LEXIS 161578, at *5-6.

Nevertheless, Williams attempts to avoid summary judgment on this claim by citing to the speculative hearsay evidence of himself and some of his co-workers who claim that non-African-American employees were treated more favorable by Glancey than Williams. (*See* Opp. at 19 (asserting that Williams's former co-worker, Trini Lopez told Williams that she did not go to a client event but told Glancey, almost a year later, that she could not recall whether she attended); *see also id.* (asserting that Williams had discussions with his team members that Lance Helmick missed a lot of things). But even in his Opposition, Williams admits that Lopez was not actually similarly situated to him because she did not have the same disciplinary history that Williams had. (*See* Opp. at 10 (citing Glancey's testimony that Williams and Lopez did not have the same disciplinary history). In any event, despite Williams's speculation (premised, in part, upon the hearsay of third parties) that these individuals were somehow treated better than he was, Williams admits that he is unaware of whether Helmick or Lopez provided prior notice to Glancey if they missed meetings or events. (Williams Dep. at 68, 74, 77, 80, 83-84, MSJ Ex. 2.) Williams also admits that he does not "know for a fact about anyone being written up." (*Id.* at 76.) Williams also admits that other than his unconfirmed belief that Helmick, Lopez and Hooks missed the meetings without receiving discipline, he is not "aware" of any specific examples of that actually happening. (Tr. at 257.)[5] Williams also offers no evidence that Glancey was even aware of the alleged violations. Thus, Williams has not met his burden to establish the existence of substantially similar comparators who received better treatment.

---

[5] The unrefuted facts establish that Helmick was disciplined by Glancey at times, that Helmick and Lopez never missed a client meeting or sales team meeting without providing prior notice to Glancey, and that Glancey was not aware of whether Lopez actually appeared at the client event at FedEx Field. (Glancey Decl. ¶ 10, MSJ Ex. 31; Lance Helmick Letter of Concern (RICOH_RW_0000430, MSJ Ex. 30).

A plaintiff who cannot point to comparators who were actually treated better cannot make out a *prima facie* case. *Perry v. Mail Contrs. of Am., Inc.*, 589 Fed. App'x. 617, 618 (4th Cir. 2014). Williams's own speculation about his coworkers does not save this claim from summary judgment. Courts routinely dismiss claims of race discrimination premised upon such speculation about alleged comparators. *See McCleary-Evans v. Md. DOT*, 780 F.3d 582, 586 (4th Cir. 2015) (affirming the dismissal of a complaint of race discrimination premised upon the plaintiff's belief that the Caucasian applicant selected for the position was not as qualified as the plaintiff.);

*Lastly,* Williams's Opposition fails to establish any issue of fact around whether his race had anything to do with his various disciplinary write-ups between June 2013 and his termination. Williams admits that he never heard Glancey use a racial slur and that he did not base the request for the FERC RFQ Response on Williams's race. (Williams Dep. at 140, 191, MSJ Ex. 2.) Williams has not been able to point to anything in the record (beyond his own speculation) establishing a racial animus. Because Williams has not made out a *prima facie* case of race discrimination, summary judgment is warranted for Ricoh.

## **CONCLUSION**

The undisputed facts establish that Williams's claims are insufficient as a matter of law. For all of the reasons set forth above, and in Ricoh's other Briefs, Ricoh asks this Court to enter summary judgment for Ricoh on all counts.

Dated: July 15, 2016

Respectfully submitted,

*/s/ Helenanne Connolly*
John T. McDonald
Virginia Bar No. 45633
Attorney for Ricoh USA, Inc.
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540-7839
(609) 524-2041 (Telephone)
(609) 951-0824 (Facsimile)
jmcdonald@reedsmith.com

Helenanne Connolly
Virginia Bar No. 70911
Attorney for Ricoh USA, Inc.
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, VA 22102
(703) 641-4504 (Telephone)
(703) 641-4340 (Facsimile)
hconnolly@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2016, the foregoing was filed electronically with the Clerk of the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

Nicholas Woodfield, Esq.
Virginia Bar No. 48938
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, N.C. 20006
(202) 261-2812 (Telephone)
(202) 261-2835 (Facsimile)
nwoodfield@employmentlawgroup.com
*Attorneys for Plaintiff*

/s/ *Helenanne Connolly*
Helenanne Connolly
Virginia Bar No. 70911
Attorney for Ricoh USA, Inc.
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, VA 22102
(703) 641-4504 (Telephone)
(703) 641-4340 (Facsimile)
hconnolly@reedsmith.com